FILED
2012 Sep-19  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GWENDOLYN WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:11-CV-2782-KOB** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social,** | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

On February 6, 2008, the claimant protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (R. 92). The claimant alleged disability commencing on November 1, 2005, because of Hodgkin's lymphoma disease, myeloma and arthritis. (R. 146). The Commissioner denied the claim initially on May 16, 2008. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on August 17, 2009. (R. 65). In a decision dated November 17, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 75). On June 7, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security administration. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the

Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: 1) whether the ALJ fully developed the record despite failing to obtain an opinion from a doctor assessing the claimant's RFC; 2) whether the ALJ erred in finding that the claimant could work as a conveyor feeder or conveyor off-bearer; 3) whether the ALJ's RFC properly provided a function-by-function analysis of the claimant's work-related abilities; 4) whether the ALJ properly applied the pain standard in evaluating the credibility of the claimant's statements concerning the intensity, persistence and limiting effects of her alleged symptoms; 5) whether the ALJ erred in affording no weight to the opinion of Dr. Jack Zaremba, an examining physician; and 6) whether the ALJ erred by not recontacting medical sources.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of the evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520, 416.920.

The claimant has the burden to demonstrate that she has a qualifying disability. *See*

*Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ has full responsibility to determine a claimant's RFC. *See Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); 20 C.F.R. §§ 404.1520; 404.1527; 404.1545. The ALJ does not have to seek a doctor's assessment of a claimant's RFC. SSR 96-5p, 1996 WL 374183 (July 2, 1996), 2. The ALJ does not have to order a consultative examination or medical expert testimony unless the record contains insufficient evidence from which the ALJ can make an informed decision. *See* 20 C.F.R. § 404.1519a(b); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

SSR 96-8p requires the ALJ's RFC to "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184 (July 2, 1996), 1. The ALJ can satisfy this requirement by discussing the claimant's medical record and citing a regulation that defines the exertional demands of the claimant's RFC. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007). The ALJ's decision does not have to refer to every specific piece of evidence that the ALJ evaluated, so long as the decision shows that he considered the claimant's medical condition as a whole. *Castel*, 355 F. App'x at 263. The ALJ has no obligation to discuss the claimant's ability to perform the specific exertional demands of the determined residual functional capacity. *Id.* at 355 F. App'x at 263; *Freeman*, 220 F. App'x at 959-60. For this court to reverse an ALJ's decision because of the agency's violation of the Social Security Administration's governing rules, the claimant must

4

demonstrate that the violation prejudiced her claim. *See Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011).

When the claimant proves that she has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of her symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In evaluating the credibility of a claimant's statements regarding the intensity, persistence and limiting effects of her symptoms, the ALJ may consider all objective and subjective evidence. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p, 1996 WL 374186 (July 2, 1996), 1-2. When a claimant attempts to establish disability through her own testimony of pain, the ALJ must evaluate whether the claimant has provided "(1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added). If the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

The ALJ must afford substantial weight to a treating physician's opinion unless he finds "good cause" not to do so. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). If a physician only examines the claimant one time, the ALJ does not have to consider this physician a "treating" physician and does not have to give "great weight" to his opinion. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004). An ALJ may reject the

5

opinion of a non-treating physician whenever the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). An ALJ does not owe the same level of deference to the opinions of one-time medical examiners as to treating physicians. *McSwain*, 814 F.2d at 619.

An ALJ must recontact a medical source if the source does not provide adequate information for the ALJ to determine whether the claimant has a disability. 20 C.F.R. § 416.912; *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008). In deciding whether to remand, the court should consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* at 267 F. App'x at 855 (citations omitted).  If not, no remand is necessary.

**V. FACTS**

The claimant has a high school education and was forty-four years old on the date she filed the application. (R. 74). She has no past relevant work experience but has worked intermittently as a caretaker for the elderly. (R. 52-55, 73). The claimant testified that she had worked for several temporary employment services in the past. (R. 173). The claimant originally alleged she was unable to work because of Hodgkin's lymphoma disease, myeloma and arthritis. She also stated on her application that she had "mental and emotional problems." (R. 146).

*Mental and Physical Limitations*

On October 2, 2009, the claimant's attorney moved to amend the onset date of her claim from November 1, 2005 to February 6, 2008. In this motion, her attorney stated that he was in the process of trying to obtain the records of Dr. Dice Lineberry, who treated the claimant for lymphoma in 2000. Her attorney asked for additional time to obtain the records, as Dr. Lineberry had retired. (R. 193). On November 7, 2009, the claimant's attorney wrote to the ALJ stating that

the submission of evidence was complete. The record does not contain any records or evidence from Dr. Lineberry. (R. 342).

On January 14, 2000, Dr. Mary R. Dodson examined the claimant at the University of Alabama at Birmingham (UAB) Hospital. Dr. Dodson noted that the claimant had a history of non-Hodgkin's lymphoma. The claimant complained of "crampy abdominal pain" that would wax and wane after she received chemotherapy treatment. The claimant also had mild nausea and vomiting. Despite having a positive urine sample for cocaine, the claimant "vehemently denied" cocaine use. Dr. Dodson reported that when she discussed the possibility of performing an abdominal CT of the claimant's abdomen, the claimant "became very agitated and belligerent and refused to stay" at the hospital. The claimant left the hospital against medical advice, despite Dr. Dodson informing her that leaving treatment presented "potentially life-threatening" risks, such as "an underlying fever, an abscess or any other serious condition [the patient had]." (R. 261).

On June 20, 2001, the claimant complained of chronic joint pain and knee pain at the Emergency Department of the Princeton Baptist Medical Center. The claimant received a prescription for Lortab and Celebrex. The record does not include the name of the claimant's treating physician. (R. 304-10).

On July 24, 2001, Dr. John F. Crewes treated the claimant for stomach pain and joint pain at the Emergency Department of UAB Medical West Hospital. Dr. Crewes diagnosed the patient as having "lymphoma still under treatment" and recorded that the claimant had an appointment to see her doctor in two days. Dr. Crewes prescribed Prilosec, Levsin and Vioxx. (R. 317).

On September 20, 2003, the claimant returned to the Emergency Department of Princeton

7

Baptist Medical Center and complained of stomach pain, headaches and that she had "a knot" under her nose. The record does not include the name of the claimant's treating physician. The treating physician drained blood from a swelling under the claimant's upper lip. (R. 300-02).

On June 14, 2004, the claimant returned to the Emergency Department of the Princeton Baptist Medical Center and complained of swelling in her feet, knee pain, dizziness and tingling in her hands and feet. The claimant received a prescription for medication, but the record does not state the name of the treating physician or the prescribed medication. (R. 292-94).

On September 22, 2006, the claimant received treatment for "female problems" including cramping at Princeton Baptist Health Center. The record fails to include the name of the claimant's treating physician or the medicines prescribed. (R. 272-73).

On April 24, 2008, Dr. Jon G. Rogers, Ph. D., a clinical psychologist, performed a psychological evaluation of the claimant at the request of the Felecia Haynesworth, the claimant's Disability Examiner. Dr. Rogers diagnosed the claimant with depressive disorder and anxiety disorder. He reported that the claimant was able to function independently, yet the quality of her daily activities was "below average." The claimant told Dr. Rogers that she could not work "because [her] hands and bones and . . . feet hurt all the time." She reported that depression, anxiety, a difficulty concentrating, and a fear of heights affected her employability. Dr. Rogers reported that "physical, as opposed to psychiatric, symptoms appear to be the major obstacle to employment." (R. 211, 215).

On May 3, 2008, Dr. Charles Carnel, M.D. performed a consultative medical examination of the claimant at the request of Ms. Haynesworth. Dr. Carnel diagnosed the patient with the following: (1) "Hodgkin's lymphoma, status post-chemotherapy and radiation with likely

8

peripheral neuropathy [and] (2) likely osteoarthritis at bilateral knees, metacarpophalangeal, proximal interphalangeal, and distal interphalangeal joints of both hands, and at bilateral ankles."[1] The doctor did not report that these conditions limited her ability to work in any way. The claimant reported that she had gradually noticed the onset of osteoarthrosis in her joints over the past seven to ten years and that she had suffered from Hodgkin's lymphoma for approximately nine years. She reported that the pain primarily affected her knees and hands; that prolonged standing and walking increased her pain; and that her doctors had prescribed Vioxx and Celebrex. Dr. Carnel reported that the claimant was able to use both of her hands to take off her shoes and socks and that she could walk "with a very slow, but non-antalgic gait" that was "not wide based but slightly shuffling in nature." The doctor reported that the claimant was able to walk heel and toe very slowly, to squat to the floor and get back up, and to bend over at the waist and touch her toes. (R. 220-24).

Dr. Carnel reported that the claimant had a thin physique and "becomes tearful even when taking portions of the history of present illness." He observed that "every movement made by the claimant is very slow." Dr. Carnel concluded that the bulk and tone of the claimant's muscle tone were within normal limits and that she demonstrated normal muscle strength in her upper and lower extremities. He recorded that the claimant had no deficits in light touch in the upper and lower extremities except in a "stocking glove pattern" to the proximal forearms and up to the level of her knees. [2] (R. 223-24).

---

[1]The record does not indicate why Dr. Carnel included the term "likely" in these diagnoses.

[2]A "stocking glove pattern of light touch deficit" means that the claimant has some numbness or pain in her feet and forearms due to nerve damage in these areas.

On May 14, 2008, Dr. Gloria Roque, Ph. D. performed a mental residual functional capacity assessment of the claimant. Dr. Roque concluded that the claimant could do the following: understand and remember simple instructions but not detailed ones; carry out simple instructions and sustain attention to simple/familiar tasks for extended periods; tolerate ordinary work pressures; and adapt to infrequent, well-explained changes. She also concluded that the claimant's contact with the public should be casual and limited; that feedback should be supportive; and that the claimant should avoid excessive workloads, quick decision making, rapid changes and multiple demands. (R. 225-27). Dr. Roque found that the claimant had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (R. 239).

On May 16, 2008, Felecia Haynesworth, the disability examiner, performed a physical residual functional capacity assessment of the claimant. Ms. Haynesworth found that the claimant could occasionally lift up to fifty pounds and could frequently lift up to twenty-five pounds, despite some evidence of neuropathy in her upper and lower extremities. She determined that the claimant could stand and walk for about six hours and could sit for about six hours in an eight-hour workday. Ms. Haynesworth concluded that the claimant maintained the ability to perform work with these limitations. (R. 243-48).

On June 28, 2009, the claimant received treatment for bronchitis at UAB Medical West Hospital. The treating physicians instructed the claimant to stop smoking. (R. 340).

On July 8, 2009, Jack L. Zaremba, M.D. examined the claimant at the request of the claimant's attorney. Dr. Zaremba diagnosed the claimant as having the following: (1) Hodgkin's

lymphoma, status post chemotherapy and radiation therapy with no recurrence; (2) chronic pedal edema; (3) osteoarthritis of the knees, hands and ankles interfering with ambulatory activities; and (4) depression and anxiety disorder with panic attacks. He found that she did have "moderately severe" peripheral neuropathy, likely as a result of her chemotherapy. Dr. Zaremba found that the claimant could sit for five to six hours and stand for one hour during a normal eight hour workday. He described her pain as "intractable and virtually incapacitating" and found that her fatigue and weakness were "present to such an extent to negatively affect adequate performance of daily activities of work." (R. 251-59).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 65). At the hearing, the claimant testified that she suffered from the following: swelling in her feet; pain in her knees; numbness and pain in her hands; fatigue; weakness; anxiety; and depression. (R. 43-45). She described her pain level as a seven or eight on a scale from one to ten. (R. 50).

The claimant testified that she would treat the pain with aspirin and Goody's powder. She stated that she had taken Xanax in the past for her anxiety and depression but did not indicate whether she was suffering from either of these conditions at the time of the hearing. The claimant testified that her feet would swell and her toes would "lock up" if she stood for three or four hours. She stated that she would normally lie down three or four times each day for an hour and a half. (R. 45, 49). She testified that although she could drive, she was afraid to do so because her feet and toes might prevent her from driving safely. (R. 51).

A vocational expert, Ms. Norma Jill Jacobson, testified concerning the type and

11

availability of jobs that the claimant was able to perform. The ALJ asked Ms. Jacobson to assume that a hypothetical person of the claimant's age, education and work experience could do simple, non-complex tasks; could maintain attention and concentration for two hours at a time; and could complete a forty-hour work week. The ALJ asked Ms. Jacobson to assume that all customary breaks were given; that changes to the work setting were gradual and well-explained; that contact with the general public was casual and infrequent; that the person could tolerate ordinary work pressures; and that the job should not involve an excessive workload, quick decision making, rapid changes or multiple demands. The ALJ did not ask Ms. Jacobson to limit the potential jobs to a particular exertional level. Ms. Jacobson responded that under these constraints and at a light exertional level, the claimant could perform work as a hand packer or product assembler. She responded that at either the light or medium exertional level, the claimant could perform work as a conveyer feeder and conveyer off-bearer or a kitchen worker. Finally, Ms. Jacobson stated that at the sedentary exertional level, the claimant could work as a product assembler. (R. 56-58).

The ALJ also asked Ms. Jacobson to specify the acceptable number of work absences from the potential jobs if the claimant could not complete a forty-hour work week on a consistent basis. Ms. Jacobson responded that these jobs would probably terminate the claimant if she missed two or more days per month. (R. 57-58).

### The ALJ's Decision

On November 17, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 75). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of her disability. Next, the ALJ found that the

12

claimant's history of non-Hodgkin's lymphoma, status post chemotherapy, depressive disorder and anxiety disorder qualified as severe impairments. (R. 67). He concluded, however, that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 71).

The ALJ found that the claimant's mental impairments did not individually or in combination meet or medically equal the listings criteria of 12.04 or 12.06 under 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ only discussed whether the claimant might have limitations for a mental impairment under listings 12.04 or 12.06, as the claimant did not have any mental impairment covered by the other listings.

To satisfy the paragraph B criteria of listing 12.04 or listing 12.06, the claimant's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation of extended duration. A marked limitation is a limitation that is more than moderate but less than extreme. The ALJ found that the claimant did not satisfy the paragraph B criteria for either listing, as the claimant had mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence or pace. The ALJ determined that the claimant had experienced no episodes of decompensation of extended duration. In reaching these determinations, the ALJ gave considerable weight to the opinion of Dr. Roque, who performed the Mental Residual Functional Capacity Assessment. Dr. Roque noted that the claimant cooked, shopped, performed light household chores, read, watched TV, rode the bus and helped to care for an elderly friend. The doctor found no evidence of psychosis and reported

that the claimant had good attention, concentration, memory, judgment and insight. (R. 71-72).

The ALJ also determined that the claimant did not satisfy the paragraph C criteria for listing 12.04 or 12.06. The ALJ found that the claimant did not qualify under Paragraph C of 12.04, as she did not show "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities." He also found that the claimant did not demonstrate that she had a "complete inability to function independently outside the area of one's home," as required by Paragraph C of 12.06. *Id.*

The ALJ determined that the claimant had no past relevant work. He considered the claimant's subjective allegations of pain to determine whether she had the residual functional capacity to perform any available work. The ALJ found that the claimant's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that "the claimant's statements and other allegations concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the . . . residual functional capacity assessment." (R. 72-73).

To support his conclusion, the ALJ first noted that the claimant had completed chemotherapy and radiation treatment and that "no evidence of recurrent disease" existed. The ALJ found that the claimant had "sought no recent treatment for any condition." He then referenced Dr. Carnel's examination, noting that the doctor found that the claimant had "no significant limitation of motion in any joint" and "no deficits to light touch in her upper and lower extremities except in a stocking glove pattern to the proximal forearms and up to her knees." The ALJ found that the claimant may have "lost the ability to perform work at the heavy

to very heavy exertional levels," but that nothing in the evidence contradicted the claimant's "ability to perform work at the level of the [assessed] residual functional capacity." (R. 72-73).

The ALJ considered and gave no weight to the opinion of Dr. Zaremba. He found that the rest of the medical record, including Dr. Carnel's opinion, contradicted Dr. Zaremba's opinion. The ALJ noted that Baptist Medical Center's records indicated that the claimant's physicians released her to return to work with no restrictions and that the claimant had a normal physical evaluation demonstrating normal mood and affect in September 2006. (R. 72-73).

The ALJ concluded that the claimant's impairments left her with the residual functional capacity to perform work with a medium exertional level, with the following limitations: the job involves simple, non-complex tasks; the job allows customary breaks during an eight hour day to maintain attention and concentration for these tasks; the job limits contact with the general public to a casual and infrequent level; the job does not involve excessive work loads, quick decision making, rapid changes or multiple demands; and the job presents only gradual, well-explained and infrequent changes in the work setting. Based on these findings and the testimony from the vocational expert, the ALJ concluded that the claimant retains the capacity for work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 72, 75).

## VI. DISCUSSION

### 1) Whether the ALJ fully developed the record despite failing to obtain an opinion from a doctor assessing the claimant's RFC.

The claimant argues that the ALJ failed to fully develop the record because he did not obtain a doctor's opinion assessing the claimant's RFC. The ALJ has a basic duty to "develop a

15

full and fair record." *Ellison,* 355 F.3d at 1276; *Graham*, 129 F.3d at 1422. For a case to be remanded for further development of the record, the claimant must demonstrate a "showing of prejudice" as a result of the ALJ's failure to develop the record. *Graham*, 129 F.3d at 1423.

The ALJ has the responsibility to determine a claimant's RFC. *See Phillips*, 357 F.3d at 1238; 20 C.F.R. §§ 404.1520; 404.1527; 404.1545; 416.946(c). The ALJ does not have to seek a doctor's assessment of a claimant's RFC; to do so would "confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183 (July 2, 1996), 2. The ALJ does not have to order a consultative examination or medical expert testimony unless the record contains insufficient evidence from which the ALJ can make an informed decision. *See Doughty*, 245 F.3d at 1281; 20 C.F.R. § 404.1519a(b); *Wilson*, 179 F.3d at 1278.

The claimant alleges that the ALJ failed to fully develop the record because he did not have a doctor assess her RFC. However, the claimant failed to prove that the record contained insufficient evidence for the ALJ to make an informed decision. *See Doughty*, 245 F.3d at 1281; *Wilson*, 179 F.3d at 1278; 20 C.F.R. § 404.1519a(b). This court finds that the record contained sufficient evidence for the ALJ to make his decision and that, therefore, he had no duty to obtain a doctor's opinion of the claimant's RFC. The record contained ample evidence of the claimant's medical history, including records from Dr. Carnel, Dr. Roque and Ms. Haynesworth. The claimant failed to prove that the record contained insufficient evidence for the ALJ to make an informed decision.

As the ALJ had no obligation to seek a physician's assessment of the claimant's RFC,

this court finds that the ALJ properly weighed the evidence before him and fully developed the record. The ALJ appropriately considered Ms. Haynesworth's testimony that the claimant could frequently lift up to twenty-five pounds. Ms. Haynesworth also stated that the claimant could stand and walk for six hours and could sit for six hours in an eight hour work day. Ms. Haynesworth concluded that the claimant maintained the ability to work with these limitations. In assessing the claimant's RFC, the ALJ properly considered the totality of the medical record, including Dr. Carnel's finding that the claimant had no significant limitation of motion in her joints. Additionally, the claimant failed to prove that the alleged failure of the ALJ to develop the record prejudiced her claim.

As the regulations and relevant case law did not require the ALJ to rely on a doctor's determination of the claimant's RFC, the ALJ committed no error in developing the record. This court finds that the ALJ developed a full and fair record, and substantial evidence supports his decision.

**2) Whether the ALJ erred in finding that the claimant could work as a conveyor feeder or conveyor off-bearer.**

The claimant also argues that the ALJ erred in finding that the claimant could work as a conveyor feeder or conveyor off-bearer. In support of this argument, the claimant argues that Ms. Haynesworth, the disability examiner, stated that the claimant should avoid exposure to hazardous machinery. However, the record does not indicate that Ms. Haynesworth determined that the claimant should avoid hazardous machinery. The claimant bases her argument on Ms. Haynesworth's response to a standard form question asking whether the claimant had any "Environmental Limitations." Ms. Haynesworth checked a box stating that the claimant should

avoid exposure to "Hazards (Machinery, Heights, etc.)" The form required Ms. Haynesworth to cite specific facts to explain how the evidence supported her conclusion. Ms. Haynesworth stated only that the claimant should avoid "unprotected heights." In her explanation, she did not state that the claimant should avoid exposure to any type of machinery. This court concludes that Ms. Haynesworth did not recommend that the claimant avoid machinery and that she only stated that the claimant should avoid "unprotected heights." The claimant presented no other evidence supporting the proposition that she could not work around machinery. As such, substantial evidence supports the ALJ's determination that the claimant could find work as a conveyor feeder or conveyor off-bearer.

Additionally, the vocational expert testified that the claimant could work as a hand packer, product assembler and kitchen worker. Therefore, even if the ALJ did err by stating that the claimant could work as a conveyor feeder or conveyor off-bearer, the vocational expert still testified that other jobs existed that the claimant could perform. This court finds that the ALJ did not err in stating that the claimant could work as a conveyor feeder or off-bearer, and substantial evidence supports his decision.

**3) Whether the ALJ's RFC properly provided a function-by-function analysis of the claimant's work-related abilities.**

The claimant argues that the ALJ's RFC violates SSR 96-8p because the RFC does not provide a function-by-function analysis of the claimant's work-related abilities. The claimant alleges that the RFC should have included an analysis of her postural, manipulative and environmental restrictions. SSR 96-8p does require an RFC to "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

18

function-by-function basis." SSR 96-8p, 1996 WL 374184 (July 2, 1996), 1. The ALJ can satisfy this requirement by discussing the claimant's medical record and citing a regulation that defines the exertional demands of the claimant's RFC. *See Castel*, 355 F. App'x at 263; *Freeman*, 220 F. App'x at 959-60. No statute or regulation requires the ALJ to "'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel*, 355 F. App'x at 263 (internal citations omitted).

The ALJ performed a proper function-by-function analysis as required by SSR 96-8p, as he discussed the medical record and cited 20 C.F.R. § 416.967(c), a regulation that defines the exertional demands of medium work. The ALJ thoroughly considered the medical record, discussing the claimant's history of non-Hodgkin's lymphoma, the impact of her chemotherapy treatments, Dr. Rogers' psychological evaluation, Dr. Carnel's medical-vocational examination, and Dr. Roque's mental residual functional capacity assessment. The ALJ noted that Baptist Medical center had released the patient to return to work in 2001 and that no physician had restricted her work status since that time. Additionally, the ALJ discussed Dr. Carnel's testimony that the claimant had no significant limitation of motion in any of the claimant's joints, and could walk heel to toe, squat to the floor and get back up, and bend over to touch her toes. The ALJ referenced Ms. Haynesworth's finding that the claimant could frequently lift up to twenty-five pounds. Finally, the ALJ cited 20 C.F.R. § 416.967(c) that describes the exertional demands required by medium work. As the ALJ fully discussed the medical record and cited regulations that define the exertional level associated with medium work, the ALJ did not have to specifically discuss the claimant's postural, manipulative and environmental restrictions. *See*

19

*Castel*, 355 F. App'x at 263; *Freeman*, 220 F. App'x 959-60. The RFC adequately portrayed the claimant's limitations and performed a function by function analysis in accordance with SSR 96-8p.

This court finds that the ALJ's RFC properly performed a function-by-function analysis and that substantial evidence supports the assessment.

**4) Whether the ALJ properly applied the pain standard in evaluating the credibility of the claimant's statements concerning the intensity, persistence and limiting effects of her alleged symptoms.**

The claimant argues that the ALJ improperly evaluated the claimant's credibility in applying the Eleventh Circuit's three-part pain standard. This court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision. The three-part pain standard applies when a claimant attempts to establish disability through her own testimony of pain. *Holt*, 921 F.2d at 1223. The standard requires the ALJ to evaluate whether the claimant has provided "(1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added).

When the claimant proves that she has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of her symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The ALJ may consider all objective and subjective evidence when evaluating the credibility of a claimant's statements regarding the intensity, persistence and limiting effects of her symptoms. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p,

1996 WL 374186 (July 2, 1996), 1-2. If the ALJ decides to discredit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *See Brown*, 921 F.2d at 1236. If the ALJ fails to articulate the reasons for discrediting the claimant's subjective complaints of pain, the claimant's testimony must be accepted as true. *Id.*

In this case, the ALJ conceded that the claimant's underlying medically determinable impairments could be capable of generating the level of pain that the claimant has alleged. However, the ALJ found that the entirety of the medical evidence failed to support the claimant's statements concerning the alleged intensity, persistence and limiting effects of the pain to the extent that they were inconsistent with the RFC assessment.

The ALJ explicitly articulated his reasons for discrediting the claimant's allegations about the intensity, persistence, and limiting effects of her pain. First, he stated that the record contained no evidence of any recurrent disease related to the claimant's prior episode of lymphoma. The claimant received chemotherapy and radiation treatment, and her physicians released her to normal work in 2001. Additionally, the ALJ pointed out that the claimant had sought no recent treatment for any condition. Finally, the ALJ noted that the claimant had no significant limitation of motion in any joint, as shown by Dr. Carnel's evaluation. Based on these reasons, the ALJ found that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC assessment.

Based on the explicit findings of the ALJ, this court concludes that he properly applied the Eleventh Circuit's three-part pain standard and that substantial evidence supports the ALJ's decision to discredit the claimant's testimony regarding the intensity, persistence and limiting

effects of her pain.

**5) Whether the ALJ erred in affording no weight to the opinion of Dr. Jack Zaremba, an examining physician.**

The claimant discusses, but does not specifically challenge, the ALJ's decision to afford no weight to Dr. Zaremba's opinion. An ALJ must afford substantial weight to a treating physician's opinion unless he finds "good cause" to give less weight. *McSwain*, 814 F.2d at 619. However, Dr. Zaremba only examined the claimant one time, on July 8, 2009, and, therefore, does not qualify as a treating physician. *See Crawford*, 363 F.3d at 1160; *McSwain*, 814 F.2d at 619. Because Dr. Zaremba does not qualify as a treating physician, the ALJ had no obligation to afford substantial weight to his opinion and could reject his opinion if the evidence supported a contrary conclusion. *See Syrock*, 764 F.2d at 835; *McSwain*, 814 F.2d at 619.

Substantial evidence supports the ALJ's decision to give no weight to Dr. Zaremba's opinion, as the rest of the medical record contradicts the doctor's finding that the claimant's limitations prevent her from working. Dr. Carnel's examination of the claimant in 2008 did not report any work-related limitation of function. Dr. Carnel found that the claimant had no significant limitation of motion in any joint. Additionally, Baptist Medical Center released the claimant to return to work without any restrictions. The record contains no evidence that the claimant's previous treatment for non-Hodgkin's lymphoma prevents her from working. This court finds that the ALJ gave proper weight to Dr. Zaremba's opinion and that substantial evidence supports his decision.

**6) Whether the ALJ erred by not recontacting medical sources.**

The claimant asserts that the ALJ should have recontacted Dr. Zaremba and Dr. Carnel

for clarification of their opinions pursuant to 20 C.F.R. § 416.912. However, 20 C.F.R. § 416.912 only requires an ALJ to recontact a doctor if his opinion does not provide adequate information for the ALJ to determine whether the claimant has a disability. *Couch*, 267 F. App'x at 855. If the record provides sufficient evidence for the ALJ to make a determination, he has no obligation to seek additional evidence. *Wilson*, 179 F.3d at 1278. The court must consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Couch*, 267 F. App'x at 855 (citations omitted).

This court finds that the record provided sufficient evidence for the ALJ to decide this case. Dr. Carnel's examination shows that the claimant had no significant limitation of motion in any of her joints. Dr. Carnel did not state that the claimant had any work-related limitations. Baptist Medical Center released the claimant to regular work following her chemotherapy and radiation treatment. The record contains no evidence that the claimant has received any treatment for lymphoma in over seven years. The claimant has not sought recent medical treatment for any of her claimed ailments.

As the record provided sufficient evidence for the ALJ to decide this case, the ALJ had no obligation to recontact any medical source under 20 C.F.R. § 416.912. This court concludes that the ALJ committed no error in assessing the claimant's RFC and that substantial evidence supports his decision.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order

to that effect simultaneously.

DONE and ORDERED this 19th day of September, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE